MARY JANE FALLON, Plaintiff-Appellant, v. INDIAN TRAIL SCHOOL, ADDISON TOWNSHIP SCHOOL DISTRICT No. 4, *et al.*, Defendants-Appellees.

Second District   No. 85—0806

Opinion filed October 31, 1986.—Rehearing denied December 2, 1986.

---

Joseph Michael O'Callaghan, of O'Callaghan & Waller, of Chicago, for appellant.

Kralovec, Marquard, Doyle & Gibbons, of Wheaton, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

The plaintiff, Mary Jane Fallon, appeals from the order of the circuit court which dismissed counts I, II, and III of her four-count amended complaint against the defendants, Indian Trail School (school), Addison Township School District No. 4 (school district), Maureen Roach and Louise Roynan-Leo (teachers). For the reasons set forth below, we affirm the decision of the circuit court.

The plaintiff's amended complaint sought to recover damages for spinal injuries suffered as a result of a trampoline accident which occurred on February 23, 1975. At that time the plaintiff was a sixth-grade student at the school and the defendants, Roach and Roynan-Leo, were physical education teachers. The incident occurred when the plaintiff attempted a "front drop" maneuver on the trampoline during her physical education class. In her attempt to perform the maneuver, the plaintiff sustained spinal injuries.

The plaintiff's amended complaint contained four counts. Count I alleged that the school and school district were strictly liable for the consequences of exposing pupils to an "abnormally dangerous instrumentality," a trampoline, during the physical education program. Count II alleged that the school and school district were negligent in the selection and use of an "abnormally dangerous" apparatus, a trampoline. Count III alleged the school and school district were neg-

ligent in the hiring and supervising of their teachers. Count IV alleged the wilful and wanton misconduct of all of the defendants with regard to the method in which they conducted the physical education class. The trial court dismissed counts I, II, and III, but left pending count IV. The plaintiff then filed a notice of appeal from the dismissal of counts I through III.

On appeal, the plaintiff contends that the trial court erroneously granted the motion to dismiss counts I and II, thereby preventing her from introducing evidence which would demonstrate that trampoline usage is an "abnormally dangerous" activity. The plaintiff also contends that the trial court erroneously granted the motion to dismiss count III, as it properly included the elements of a negligent hiring and supervision claim.

■ As this case comes before us on the granting of a motion to dismiss, we note that, in considering this matter, all well-pleaded facts must be taken as true, as well as all reasonable inferences which may be drawn therefrom. (*Morrow v. L. A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1096, *rev'd other grounds* (1986), 112 Ill. 2d 87.) Moreover, in ruling on a motion to dismiss, the allegations of the complaint are to be interpreted in the light most favorable to the plaintiff. *Denkewalter v. Wolberg* (1980), 82 Ill. App. 3d 569, 572.

In count I, the plaintiff alleged that the trampoline was an abnormally dangerous instrumentality, and the school district should, therefore, be held accountable under strict tort liability for any injuries due to its use. In count II, the plaintiff charged the school and school district with negligence as a result of a violation of section 10—20.8 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.8) because the trampoline was an abnormally dangerous instrumentality. We must, therefore, decide whether the plaintiff has alleged sufficient facts to support the contention that the trampoline is an abnormally dangerous instrumentality and trampoline usage is an abnormally dangerous activity.

■ Illinois recognizes strict liability under two theories: unreasonably dangerous defective products (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 621), and the theory which plaintiff alleges is applicable to this case, ultrahazardous activities (*City of Joliet v. Harwood* (1877), 86 Ill. 110). Sections 519 and 520 of the Restatement (Second) of Torts (1981) (Restatement) have formulated a definition of ultrahazardous activities. Under section 519(1) of the Restatement, "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the

harm." (Restatement (Second) of Torts sec. 519(1) (1981).) Section 520 of the Restatement lists the elements of an ultrahazardous activity as follows: "existence of a high degree of risk of some harm ***; likelihood that the harm that results from it will be great; inability to eliminate the risk by the exercise of reasonable care; [and] extent to which the activity is not a matter of common usage ***." Restatement (Second) of Torts sec. 520 (1981).

Illinois has long recognized strict liability for damages caused by engaging in an ultrahazardous activity, although it has never explicitly relied upon the Restatement factors in determining whether a given activity is abnormally dangerous. In *City of Joliet v. Harwood* (1877), 86 Ill. 110, the Illinois Supreme Court held that blasting dynamite in a residential area was intrinsically dangerous and gave rise to strict liability for the blaster. A similar result was reached in *FitzSimons & Connell Co. v. Braun & Fitts* (1902), 199 Ill. 390, 394-97, and *Opal v. Material Service Corp.* (1956), 9 Ill. App. 2d 433, 451-61. Finally, a Federal district court held that shipping acrylonitrile, a hazardous and toxic substance, was an ultrahazardous activity that subjected the shipper to strict liability under Illinois law. (*Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.* (N.D. Ill. 1981), 517 F. Supp. 314.) In so holding, the court relied upon the Restatement formulation of abnormally dangerous activities. 517 F. Supp. 314, 318-20.

■ The plaintiff concedes that there is no Illinois authority discussing either whether (1) trampoline usage of this sort is an ultrahazardous activity, or (2) the trampoline is an abnormally dangerous instrumentality. Indeed, the trial court, in its written disposition dismissing counts I and II, noted that most of the discussion which related to this subject had to do with such obviously dangerous instrumentalities and activities as blasting, transport of explosives, maintenance of high electrical current, large animals, and maintenance of water reservoirs. In support of her argument, the plaintiff attached Exhibit A, "Trampoline-Related Quadriplegia: Review of the Literature and Reflections on the American Academy of Pediatrics' Position Statement," a review documenting cervical spine injuries resulting from trampoline-related accidents.

After reviewing Exhibit A, the trial court's disposition, as well as the plaintiff's amended complaint, we believe the trial court was correct in finding that trampoline usage, as alleged in the present case, does not fall within the parameter of an abnormally dangerous activity. We also agree that the trampoline, as a matter of law, is not an abnormally dangerous instrumentality.

Trampolines are widely used in the school systems as well as

other centers of gymnastic activity. The injuries that may be caused result not from the trampoline itself but rather from the manner of its use. The terms "ultrahazardous," "abnormally dangerous," or "intrinsically dangerous," as traditionally used, refer to that type of danger which is inherent in the instrumentality itself at all times and do not mean danger which arises from mere casual or collateral negligence of others with respect to it under the particular circumstances. More concisely, it means dangerous in its normal or nondefective state. (*Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 763.) We conclude that although its negligent use can be the basis for liability, neither the trampoline itself nor its ordinary use is abnormally dangerous or ultrahazardous. (*Cf. Snow v. Judy* (1968), 96 Ill. App. 2d 420, 423.) Therefore, counts I and II were properly dismissed.

■ In count III, the plaintiff sought to charge the school and the school district on a negligent-hiring tort theory. Those allegations in count III which refer to the trampoline as a dangerous or an inherently dangerous device will be disregarded since that issue has been previously answered herein. Other allegations contained in this count are alleged by the plaintiff in other counts and need not be discussed. Remaining are the allegations that the school district carelessly and negligently: (1) failed to investigate the teachers' credentials and teaching abilities, and (2) allowed and permitted the teachers to teach when they were not qualified.

We hold that these allegations are legally insufficient to support a cause of action for negligent hiring, and thus the trial court's dismissal was proper.

There are many kinds of unfitness for employment that do not give rise to tort liability for negligent hiring. The right of an employer to make decisions about the qualifications of his employees does not establish, *per se*, a right for negligent hiring. For example, employers may hire the mentally and physically handicapped, who have some degree of unfitness. Such employers, however, do not assume liability because of their employees' unfitness. Liability for negligent hiring arises only when a particular unfitness of an applicant creates a danger of harm to a third person which the employer knew, or should have known, when he hired and placed this applicant in employment where he could injure others. (See, *e.g., Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333 (plaintiff attacked by bouncer whom defendant hired knowing his reputation and vicious propensity for physical violence on others); *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920 (security guard used passkey to enter apartment and assaulted plaintiff). Therefore, allegations that the

school district failed to investigate or that the teachers were unqualified are insufficient to state a cause of action for negligent hiring under the allegations here. *Stein v. Burns International Security Services, Inc.* (1981), 102 Ill. App. 3d 776, 779-80.

Accordingly, for the reasons set forth above, the decision of the trial court is affirmed.

Affirmed.

REINHARD and HOPF, JJ., concur.